# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANTHONY BAEZ, JONATHAN BERMUDEZ, JERMAINE GONSALVES, and DEDRICK LINDSEY on behalf of themselves and all others similarly situated;<br><br>              Plaintiffs-Petitioners,<br><br>  v.<br><br>JOSEPH D. MCDONALD, JR., SHERIFF OF PLYMOUTH COUNTY, in his official capacity, ANTONE MONIZ, SUPERINTENDENT OF THE PLYMOUTH COUNTY CORRECTIONAL FACILITY, in his official capacity, and JOHN and JANE DOES, in their individual and official capacities,<br>              Defendants-Respondents. | CIVIL ACTION NO.<br>1:20-cv-10753-LTS |

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITIONERS' MOTION FOR CLASS CERTIFICATION

### Introduction

This action is filed on behalf of a class of individuals currently being detained by Respondents-Defendants ("Respondents") at the Plymouth County Correctional Facility ("PCCF") located in Plymouth, Massachusetts in connection with charges pending trial or sentencing in the United States District Court for the District of Massachusetts. Each member of the proposed class is at grave risk of contracting COVID-19 because of the life-threatening, congregate conditions under which they are confined. Common questions of both fact and law pervade this matter, and Respondents have acted and refused to act on grounds that are generally applicable to the class as a whole, making class certification appropriate here.

As explained below, the requirements of Federal Rules of Civil Procedure 23(a) and (b) are amply met by the proposed class. The class is sufficiently numerous: approximately one hundred and fifty federally detained individuals are currently being held at PCCF. *See* Petition[1] at ¶139. All members of the class are bound together by common questions of law and fact – most prominently, whether in the face of the lethal COVID-19 pandemic, the current conditions of confinement at PCCF place the detainees' safety and health at grave risk in a manner that violates the class members' constitutional rights. The named Petitioners are proper class representatives because their claims are typical of the class members and because they and their counsel will adequately and vigorously represent the class. Finally, Rule 23(b)(2) is satisfied here because the Respondents have "acted or refused to act on grounds that apply generally to the class" through creating and maintaining conditions that put the class at imminent risk of contracting COVID-19, the deadly virus that is currently sweeping the globe.

The Centers for Disease Control and Prevention ("CDC") has advised that COVID-19 is thought to spread primarily from person-to-person, between people who are in close contact with one another (within about 6 feet), and through respiratory droplets produced when someone speaks, coughs, or sneezes, including the touch of shared surfaces. *Id.* at ¶28. Accordingly, the CDC has made clear that the only known effective measures to reduce the risk of contracting COVID-19 are social distancing and rigorous attention to hygiene. *See* CDC, *Coronavirus Disease (COVID-19): How to Protect Yourself*, (Mar. 18, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html. ("The best way to prevent illness is to avoid being exposed to this virus."). The calls for individuals and organizations throughout the world to adopt these measures has been uniform, and has led to entire nations,

---

[1] "Petition" refers to the Class Action Petition Seeking Writ of Habeas Corpus Under 28 U.S.C. §2241 and Complaint for Declaratory and Injunctive Relief (filed April 17, 2020).

states, and cities being locked down, in an extraordinary and unprecedented battle to stop the spread of this deadly virus. Indeed, 95% of the American population is under strict instructions to stay at home. *Id.* at ¶40.

Medical experts have recognized the obvious risk that is presented in congregate environments similar to the facilities operated by Respondents. Dr. Josiah Rich, a Professor of Medicine at Brown University and the co-founder of the Center for Prisoner Health and Human Rights at The Miriam Hospital, has explained that, in light of the significant and heightened threat posed by COVID-19 to individuals in incarcerated settings, "it is imperative to scale up efforts to "decarcerate," or release, as many detainees as possible." *Id.* at ¶75; Petition at Exhibit C. He opines that "public safety will be at even greater peril if we fail to mitigate risks associated with confining too many people in correctional facilities during a pandemic." *Id.* Dr. Regina Celeste Larocque, an associate physician of infectious disease at Massachusetts General Hospital and an Instructor at Harvard Medical School has explained that correctional facilities like PCCF "face a very high risk of a COVID-19 outbreak." *Id.* at ¶74; Petition at Exhibit D. She explains that "such an outbreak would have disastrous consequences for the facility's residents and staff, and the broader community," and it therefore "is urgent that [Respondents] institute a comprehensive social distancing regimen at [PCCF] that must include elimination of shared cells if it is to be successful." *Id.* Dr. Jonathan Giftos, a current professor in the Department of Medicine at Albert Einstein College of Medicine and a former Clinical Director of Substance Use Treatment for NYC Health and Hospitals, Division of Correctional Health Services at Rikers Island has recommended that "given the proximity and high numbers of inmates correctional staff and healthcare workers at pretrial detention facilities . . . it is an urgent priority to reduce the number

of people in detention facilities, including PCCF, during this national public health emergency." *Id.* at ¶75; Petition at Exhibit E.

At PCCF, however, detention for federal detainees is largely business as usual. Respondents have continued to confine detainees in close proximity, without adequate soap, disinfectant, sanitizer, toilet paper, and other daily anti-viral necessities. *See generally* Petition at Exhibits H, I, J, K (detailing ongoing conditions of confinement at PCCF experienced by Petitioners and federal detainees Anthony Baez, Jonathan Bermudez, Jermaine Gonsalves, Dedrick Lindsey). The various Affidavits submitted by Petitioners include descriptions of cells and other sleeping quarters that routinely require detainees to sleep closer than six feet to each other. *See, e.g.,* Exhibit H ¶ 4 (description from Petitioner Baez of a cell shared with four other detainees where it is impossible to maintain six feet of separation). Petitioners also describe routinely eating at tables that require detainees to be closer than six feet apart. *See, e.g.,* Exhibit K ¶ 4 (description by Petitioner Lindsay of tables that require detainees to eat in close proximity to each other).

Several recent court rulings have explained the significant health risks—to inmates, guards, and the outside community at large—created by prison populations in the face of the COVID-19 epidemic. *See, e.g.*, *Jimenez v. Wolf*, No. 18-10225-MLW (D. Mass. Mar. 26, 2020) (ordering release of immigrant detainee in the midst of the COVID-19 pandemic and noting that "being in a jail enhances risk" and that in jail "social distancing is difficult or impossible"); *United States v. Stephens*, No. 15-cr-95-AJN, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (ordering the release of inmate in Federal Bureau of[6] Prisons custody due, in part, to risk posed   by COVID-19 in the facility); *In the Matter of the Extradition of Alejandro Toledo Manrique*, Case No. 19-mj-71055, 2020 WL 1307109, at *1 (N. D. Cal. March 19, 2020) (ordering change to conditions of bail for an individual to postpone incarceration, in part in light of risk of vulnerability to the coronavirus) *United States v. Barkman*, No. 3:19-cr-0052-RCJ-WGC, 2020

U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020). On March 22, 2020, the New Jersey Supreme Court issued a consent order for the presumptive release of approximately 1,000 persons by March 26, 2020.

Most recently, in *Savino v. Hosgson*, No. 20-10617-WGY, 2020 (D. Mass.) (Order of April 8, 2020), a Court in this District certified a class action brought by Immigration and Customs Enforcement ("ICE") detainees at the Bristol County House of Correction addressing the conditions of confinement at that facility. In that Order, the Court recognized the "especially grim moment" presented by the COVID-19 pandemic, and has certified a class in order to address the significant and serious concerns regarding "the health and safety of the petitioners – as well as the other inmates, staff and the public." *Id.* at 1-2. Those very same concerns are presented in this action.

## I. PROPOSED CLASS DEFINITION

Petitioners propose to represent a Class of all federal detainees who are now or will be held by Respondents-Defendants at the Plymouth County Correctional Facility ("PCCF"), a facility located in Plymouth, Massachusetts. The proposed Class includes federal detainees being held or to be held at PCCF prior to trial in the United States District Court for the District of Massachusetts, as well as federal detainees who have plead or have otherwise been found guilty of certain criminal offenses but have not yet been sentenced. *See* Petition at ¶ 138.

## II. PROPOSED CLASS REPRESENTATIVES

The proposed class representatives are Anthony Baez, Jonathan Bermudez, Jermaine Gonsalves and Dedrick Lindsey, all of whom are currently detained at PCCF in connection with criminal charges pending in the United States District Court for the District of Massachusetts. *See* Petition at Exhibits H, I, J, K.

Petitioner Baez is a defendant currently being detained at PCCF as he awaits trial in a criminal matter pending in the United States District Court for the District of Massachusetts. *See*

Petition, Exhibit H at ¶ 1. Mr. Baez is currently confined to a cell in PCCF that he shares with four other detainees. *Id.* ¶ 4. The detainees share the same toilet. *Id.* In light of the size of the cell, it is impossible for Mr. Baez to maintain six feet of separation from his other cellmates. *Id.* ¶¶ 5-6. Mr. Baez has not experienced any enforcement of "social distancing" protocols when he has been out of his cell in the common areas for at PCCF. *Id.* He has also had limited access to hand sanitizer, toilet paper and soap. *Id.* ¶ 8

Petitioner Bermudez is a defendant currently being detained at PCCF as he awaits trial in a criminal matter pending in the United States District Court for the District of Massachusetts. *See* Petition, Exhibit I at ¶ 1. Mr. Bermudez has been assigned to a cell with one other individual. *Id.* ¶ 4. The cell is small, and the two detainees share the same toilet. *Id.* Mr. Bermudez has had limited access to soap and hand sanitizer. *Id.* ¶¶ 6-7. He remains fearful for his health and safety at PCCF due to the conditions at the facility and the coronavirus pandemic. *Id.* ¶ 16.

Petitioner Gonsalves is a defendant currently being detained at PCCF as he awaits trial in a criminal matter pending in the United States District Court for the District of Massachusetts. See Petition, Exhibit J at ¶ 1. Mr. Gonsalves is housed in a cell with another inmate. Id. ¶ 4. It is not possible for Mr. Gonsalves and his cellmate to maintain a distance of six feet when they are in the cell together. *Id.* Mr. Gonsalves has not observed any effort at PCCF to enforce social distancing between detainees at meals or in other common areas of the facility. *Id.* ¶¶ 5-6. He describes PCCF as "a dirty environment" and states that "there have been no visible efforts to improve cleanliness as a result of the pandemic." *Id.* ¶ 9.

Petitioner Lindsey is a defendant currently being detained at PCCF as he awaits trial in a criminal matter pending in the United States District Court for the District of Massachusetts. *See* Petition, Exhibit K at ¶ 2. Petitioner Lindsey is currently residing in a "dorm unit" at PCCF,

where 6-8 individuals share the same living quarters. *Id.* ¶ 4. The beds in the "dorm unit" are next to one another and are not six feet apart. *Id.* The men living in his unit share meals at tables where they cannot be more than six feet apart. *Id.* ¶ 5. Mr. Lindsey is fearful for his health at PCCF due to his regular exposure to the other individuals in the unit he shares space with. *Id.* ¶ 11.

## ARGUMENT

Petitioners seek certification of the class described above under Federal Rule of Civil Procedure 23. "By its terms, [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Class certification is thus appropriate where the proposed class satisfies the four requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and at least one of the categories of Rule 23(b). These criteria are met here, where the numerous civil immigration detainees who form the proposed class are all being held by one institution and uniformly placed at risk of contracting the COVID-19 virus due to their conditions of confinement.

Actions such as the instant one are particularly amenable to class treatment. Rule 23 was enacted to "facilitate the bringing of class actions in the civil-rights area." 7A Wright & Miller, Federal Practice & Procedure §1775 (3d ed. 2018). The arguments in favor of class certification are especially strong in this context, where individual class members are unlikely to be able to pursue their claims individually. Even under typical circumstances, federal detainees are hard-pressed to bring their own civil claims, since they are all detained, and many do not speak English. These difficulties are compounded even further in the current moment, when Massachusetts (like much of the rest of the world) is essentially on lock-down. Class

certification is particularly appropriate here, and all the requisite elements of Rule 23 have been met.

**I.      The Proposed Class Meets the Requirements of Rule 23(a).**

   **A.      The proposed class is so numerous that joinder would be impractical.**

The proposed class satisfies the requirement that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The First Circuit has recognized that this is only a "low threshold," *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). "[A] class size of forty or more will generally suffice in the First Circuit." *Reid*, 297 F.R.D. at 189.

Here, on information and belief, there are currently more than one hundred and fifty (150) federal detainees who are being housed at PCCF. *See* Petition at ¶ 87. Many of these detainees are necessarily indigent and lack the financial resources to bring individual claims. *Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 554 (D. Mass. 2017) (class certification is favored where the Court "can reasonably infer that substantially all of the class members have limited financial resources....").

Moreover, while the pace of arrests and detentions in this District may have slowed, new federal detainees may continue to be admitted to PCCF, rendering the current number of detainees "merely the floor for this numerosity inquiry." *Reid*, 297 F.R.D. at 189. The fact that future detainees form a part of the proposed class makes joinder, already an infeasible option, that much more impracticable. *Id.*

   **B.      The proposed class representatives present issues of fact and law in common with the class.**

Rule 23(a)(2) requires that "questions of law or fact" be "common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the identification of an issue that by its nature "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke." *Dukes v. Wal-Mart Stores, Inc.*, 564 U.S. 338, 350 (2011). A single common issue is sufficient to establish commonality. *Id.* at 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do....") (internal quotation marks, brackets, and citations omitted). For this reason, the First Circuit has recognized that, like numerosity, the commonality requirement is "a low bar...." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008).

This case satisfies the requirement of at least "a single common question" that is shared by all members of the proposed class. Among others: Whether the conditions of confinement at PCCF, under the current conditions and in light of the COVID-19 pandemic, render class members' confinement a punishment that violates constitutional standards. All of the class members either have been, or will be, subjected to these common conditions, and a determination that Respondents' conduct is unconstitutional will therefore "resolve an issue that is central to the validity" of each and every class member's detention. *Dukes*, 564 U.S. at 350 (2011).

The fact that certain details relating to their individual conditions of confinement might vary between class members does not defeat commonality. *Reid*, 297 F.R.D. at 191 (class certification granted despite individual differences among class members, where common issues pervade). And in fact, conditions experienced at PCCF by the proposed class representatives are shared with other members of the proposed class. Since the COVID-19 epidemic began, PCCF has continued to confine detainees in close proximity, without adequate soap, toilet paper, and other daily necessities. *See* Petition at Exhibit H, ¶4, 5-6, 8; Exhibit I, ¶4, 6, 7, 16; Exhibit J, ¶4, 5-6, 9; Exhibit K, ¶4, 5, 11.

Indeed, "social distancing" is essentially impossible for all of the class members, just as it is for the proposed class representatives. *See* Petition at Exhibit H, ¶4, 5-6; Exhibit I, ¶8-9; Exhibit J, ¶4-5; Exhibit K, ¶4-5. Beds are in close proximity to each other and meals are eaten in close quarters. *Id.* Basic hygiene protections are largely unavailable. *See* Petition at Exhibit H, ¶8-9; Exhibit I, ¶5-7,9-10; Exhibit J, ¶7-9; Exhibit K, ¶9. While the rest of the country scours grocery store shelves for Purell, the class members lack even the basics of adequate soap and toilet paper. *Id.*

As courts have repeatedly recognized, even under the more stringent standards applicable to class actions that seek damages under Rule 23(b)(3), class action treatment is appropriate despite the existence of individual differences. *Tyson Foods, Inc. v. Bouaphakeo*, --- U.S. ---, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (internal quotation marks and citations omitted). Where, as here, the commonalities are readily apparent, Rule 23 is amply satisfied.

### C. The class representatives' claims are typical of those of the class.

Where commonality looks to the relationship among class members generally, typicality under Rule 23(a)(3) focuses on the relationship between the proposed class representative and the rest of the class. *See George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 176 (D.Mass. 2012) (citing 1 William B. Rubenstein, *Newberg on Class Actions* § 3:26 (5th ed. 2012)). In practice, however, the analysis of typicality and commonality "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). To satisfy Rule

23(a)(3), "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 156.

Typicality is "'not highly demanding' because 'the claims only need to share the same essential characteristics, and need not be identical.'" *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 24-25 (D.Mass. 2003), *quoting* 5 *Moore's General Practice* § 23.24[4]. "For purposes of demonstrating typicality, '[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D.Mass. 2005), *quoting In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004).

Here, the interests of the proposed class representatives and the proposed class members are aligned. *Cf. Faherty v. CVS Pharmacy, Inc.*, 2011 U.S.Dist.LEXIS 23547, at *6 (D.Mass., March 9, 2011) (noting that the alignment need not be perfect). The proposed class representatives are members of the class, have suffered the same injuries as the proposed class members, and have been injured by Defendants' actions and inactions that have led to conditions of confinement that threaten the health and safety of all class members. Under such circumstances, the representative's claims are "obviously typical of the claims ... of the class," and satisfy Rule 23(a)(3). *See Baggett v. Ashe*, 2013 U.S.Dist.LEXIS 73202, at *2 (D. Mass. May 23, 2013); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (typicality requirement is satisfied when "the cause of the injury is the same—here, the Board's discriminatory policy and practice").

There is, moreover, no risk that issues involving the named Plaintiffs' individual claims will impede their litigation on behalf of the class. Because the named Plaintiffs are challenging the same practices and seeking the same relief without regard to the outcome of their own efforts

to obtain release from unconstitutional conditions of confinement, they "can fairly and adequately pursue the interests of the absent class members without being sidetracked by [their] own particular concerns." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D.Mass. 2008).

### D. The proposed class representatives and class counsel can adequately represent the class.

Finally, the named plaintiffs and their counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two factors must be satisfied to fulfill this prerequisite: "(1) the absence of potential conflict between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation." *Adair v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991), *quoting Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985) (internal quotations omitted).

Here, "the interests of the representative party will not conflict with the interests of any of the class members," *Andrews v. Bechtel Power Corp.*, 780 F.3d 124, 130 (1st Cir. 1985), because – as already explained – those interests are aligned. The named Plaintiffs have alleged the same injuries, arising from the same conduct, and they seek the same injunctive and declaratory relief, which will apply equally to the benefit of all class members.

In addition, "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Id.* The Petitioners are represented by *pro bono* attorneys from WilmerHale LLP and Todd & Weld LLP. Collectively, counsel has significant experience in the areas of criminal law, constitutional law, and class action litigation. For the same reasons, counsel also satisfy the requirements of Rule 23(g) and should be appointed as class counsel.

**II.     The Proposed Class Meets the Requirements of Rule 23(b)**

"In addition to meeting the four requirements of Rule 23(a)," the Plaintiffs "must show that the proposed class falls into one of the three defined categories of Rule 23(b)." *Reid*, 297 F.R.D. at 192. Here, the most applicable category is described in Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole."

The "prime examples" of Rule 23(b)(2) cases, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997), are cases like this one, where the claim asserts that the Respondents have "engaged in unlawful behavior towards a defined group." *Reid*, 297 F.R.D. at 193. The rule applies, moreover, where "a single injunction or declaratory judgment would provide relief to each member of the class" (as opposed, for example, to cases in which each class member would need an individual injunction or declaration, or in which each class member would be entitled to an individualized award of money damages). *Dukes*, 564 U.S. at 360-61.

The claims asserted in the Petition and Complaint satisfy these requirements. Respondents have engaged in unconstitutional behavior towards the entire class. Every member of the class is at imminent risk of being infected by COVID-19, due to their conditions of confinement at PCCF. And, because every member of the class is entitled to relief from these unconstitutional conditions, an appropriate injunction or declaration will provide relief on a class-wide basis. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. *Dukes*, 564 U.S. at 360; *see also Savino*, *supra*, at 24-25 (explaining that a uniform remedy may be possible in

proposed class action "whether in the form of declaratory relief or . . . an injunction ordering the government to reduce crowding of Detainees") (citing *Brown v. Plata,* 563 U.S. 493, 502 (2011)).

## **CONCLUSION**

Plaintiffs respectfully ask the Court to:

(1) Certify a class consisting all federal detainees who are now or will be held by Respondents-Defendants at the Plymouth County Correctional Facility ("PCCF"), a facility located in Plymouth, Massachusetts;

(2) Appoint named Petitioners as class representatives; and

(3) Appoint undersigned counsel as class counsel in this action.

Respectfully submitted,

ANTHONY BAEZ, JONATHAN BERMUDEZ,
JERMAINE GONSALVES, and DEDRICK LINDSEY
on behalf of themselves and all others similarly situated,

By their attorneys,

*/s/ Daniel J. Cloherty*
Daniel J. Cloherty (BBO #565772)
Saraa Basaria (BBO #685705)
TODD & WELD LLP
One Federal Street, Floor 27
Boston, MA  02110
(617) 720-2626
dcloherty@toddweld.com
sbasaria@toddweld.com

*/s/Emily Schulman*
Emily Schulman (BBO #566374)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6077
emily.schulman@wilmerhale.com

David E. Rudin (*pro hac vice* pending)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 936-7249
david.rudin@wilmerhale.com

Dated: April 17, 2020

## **CERTIFICATE OF SERVICE**

I, Daniel J. Cloherty, counsel for Petitioners, hereby certify that on this date this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); this document is being served by first class mail to the Respondents c/o Patrick Lee, Director of Legal/Civil Process, Plymouth County Sheriff's Department, 24 Long Pond Road, Plymouth, MA  02360 and by email at plee@pscdma.org.

I further certify that a copy of this document is also being served on this date by mail to the United States Attorney's Office for the District of Massachusetts, One Courthouse Way, Boston, MA  02210 Attn: Rayford A. Farquhar, Civil Chief, and by email to rayford.farquhar@usdoj.gov.

*/s/ Daniel J. Cloherty*
Daniel J. Cloherty

Date:   April 17, 2020