# Respondent's PowerPoint Presentation
*Baez, et al. v. Moniz*, No. 1:20-cv-10753-LTS (D. Mass.)







# Pandemic Preparedness

- In regular communication with the Massachusetts Department of Public Health; follows CDC guidance.

- Conference calls with other facilities on multiple days, weekly.

- Two dedicated housing areas for medical isolation.

- Medical isolation:  single cell with solid walls and solid door.

- Quarantine:  single cell with solid walls and solid door.

- Protocols for positive tests, including negative pressure cell.

# Pandemic Preparedness

- Housing units are large areas where common area chairs are spread out six feet apart to encourage social distancing.

- Recreation periods split in half.

- Meals conducted in groups, only half out at a time.

- Gym use suspended.

- Safe transport plans, including PPE protocols for transport.

- Sufficient reserves of PPE.

# Pandemic Preparedness

- Information is disseminated through posting and through staff.

- Detainees can write request slips if they have any questions.

- Information discussed with staff and contractors and vendors, in addition to signage.

- Detainees given surgical masks on three separate occasions. Replacements available as needed.

- Employees and visitors get temperature checks.

- Detainees screened and quarantined upon arrival and return.

# Pandemic Preparedness

- Symptomatic prisoners are required to wear a mask.

- They are immediately placed into isolation.

- Clean masks are available as needed.

- Common areas are cleaned regularly during the day and at night.

- Antibacterial soap handed out each week.

- Each cell has running water, a sink, and a toilet.

- Each unit has multiple showers.

- Detainees have access to paper towels and cloth towels

# CDC Recommendations for PPE

| Classification of Individual Wearing PPE | N95 respirator | Face mask | Eye Protection | Gloves | Gown/ Coveralls |
|---|---|---|---|---|---|
| **Incarcerated/Detained Persons** | | | | | |
| Asymptomatic incarcerated/detained persons (under quarantine as close contacts of a COVID-19 case*) | Apply face masks for source control as feasible based on local supply, especially if housed as a cohort | | | | |
| Incarcerated/detained persons who are confirmed or suspected COVID-19 cases, or showing symptoms of COVID-19 | – | ✓ | – | – | – |
| Incarcerated/detained persons in a work placement handling laundry or used food service items from a COVID-19 case or case contact | – | – | – | ✓ | ✓ |
| Incarcerated/detained persons in a work placement cleaning areas where a COVID-19 case has spent time | Additional PPE may be needed based on the product label. See CDC guidelines for more details. | | | ✓ | ✓ |

\*   If a facility chooses to routinely quarantine all new intakes (without symptoms or known exposure to a COVID-19 case) before integrating
    into the facility's general population, face masks are not necessary.

# CDC Recommendations for PPE

| Classification of Individual Wearing PPE | N95 respirator | Face mask | Eye Protection | Gloves | Gown/ Coveralls |
|---|---|---|---|---|---|
| **Staff** | | | | | |
| Staff having direct contact with asymptomatic incarcerated/detained persons under quarantine as close contacts of a COVID-19 case* (but not performing temperature checks or providing medical care) | – | Face mask, eye protection, and gloves as local supply and scope of duties allow. | | | – |
| Staff performing temperature checks on any group of people (staff, visitors, or incarcerated/detained persons), or providing medical care to asymptomatic quarantined persons | – | ✓ | ✓ | ✓ | ✓ |
| Staff having direct contact with (including transport) or offering medical care to confirmed or suspected COVID-19 cases (see CDC infection control guidelines) | ✓** | | ✓ | ✓ | ✓ |
| Staff present during a procedure on a confirmed or suspected COVID-19 case that may generate respiratory aerosols (see CDC infection control guidelines) | ✓ | – | ✓ | ✓ | ✓ |
| Staff handling laundry or used food service items from a COVID-19 case or case contact | – | – | – | ✓ | ✓ |
| Staff cleaning an area where a COVID-19 case has spent time | Additional PPE may be needed based on the product label. See CDC guidelines for more details. | | | ✓ | ✓ |

# CDC Recommendations for Testing

## PRIORITIES FOR COVID-19 TESTING
**(Nucleic Acid or Antigen)**

**High Priority**

- Hospitalized patients
- Healthcare facility workers, workers in congregate living settings, and first responders **with** symptoms
- Residents in long-term care facilities or other congregate living settings, including prisons and shelters, **with** symptoms
- Persons identified through public health cluster and selected contact investigations

**Priority**

- Persons **with** symptoms of potential COVID-19 infection, including: fever, cough, shortness of breath, chills, muscle pain, new loss of taste or smell, vomiting or diarrhea and/or sore throat
- Persons **without** symptoms who are prioritized by health departments or clinicians, for any reason, including but not limited to:  public health monitoring, sentinel surveillance, or screening of other asymptomatic individuals according to state and local plans.

# DPH Testing Criteria

| EPIDEMIOLOGIC OR OCCUPATIONAL RISK | | CLINICAL FEATURES[3] |
|---|---|---|
| **CATEGORY 1**<br>Healthcare personnel and first responders | **AND** | Fever **OR** signs/symptoms of respiratory illness<br>• even mild signs and symptoms (e.g., sore throat) of COVID-19 should be evaluated among healthcare personnel. |
| **CATEGORY 2**<br>Acute respiratory illness in congregate settings (e.g., Long-term care facilities, shelters, prisons)<br>• LTCF populations are at high risk for severe disease and transmission can occur readily in these settings. There should be a low threshold for testing in this setting. | **AND** | Fever **OR** signs/symptoms of a lower respiratory illness (e.g., cough, shortness of breath, pneumonia)<br><br>Residents of long-term care facilities may present with other signs and symptoms such as sore throat, malaise, body aches, low grade fever, lowered O2 saturation, changes in mental status, diarrhea and changes in control of diabetes. |

| PATIENTS IN CATEGORY 7 SHOULD NOT BE PRIORITIZED FOR TESTING AT THIS TIME |
|---|
| **CATEGORY 7**<br>Individuals without symptoms |

# Additions to the CPS Guidelines

- New Symptoms:
  - COVID feet (discolorations on toes and feet)
  - Elderly mental status changes and disequilibrium
- Highlighted emergency signs:
  - Trouble breathing
  - Persistent pain or pressure in the chest
  - New confusion or inability to arouse
  - Bluish lips or face
- No longer always test for Influenza A and B first

# CDC Recommendations for Social Distancing

√ **Implement social distancing strategies to increase the physical space between incarcerated/ detained persons (ideally 6 feet between all individuals, regardless of the presence of symptoms).** Strategies will need to be tailored to the individual space in the facility and the needs of the population and staff. Not all strategies will be feasible in all facilities. Example strategies with varying levels of intensity include:

- **Common areas:**
  - Enforce increased space between individuals in holding cells, as well as in lines and waiting areas such as intake (e.g., remove every other chair in a waiting area)
- **Recreation:**
  - Choose recreation spaces where individuals can spread out
  - Stagger time in recreation spaces
  - Restrict recreation space usage to a single housing unit per space (where feasible)
- **Meals:**
  - Stagger meals
  - Rearrange seating in the dining hall so that there is more space between individuals (e.g., remove every other chair and use only one side of the table)
  - Provide meals inside housing units or cells
- **Group activities:**
  - Limit the size of group activities
  - Increase space between individuals during group activities
  - Suspend group programs where participants are likely to be in closer contact than they are in their housing environment
  - Consider alternatives to existing group activities, in outdoor areas or other areas where individuals can spread out
- **Housing:**
  - If space allows, reassign bunks to provide more space between individuals, ideally 6 feet or more in all directions. (Ensure that bunks are cleaned thoroughly if assigned to a new occupant.)
  - Arrange bunks so that individuals sleep head to foot to increase the distance between them
  - Rearrange scheduled movements to minimize mixing of individuals from different housing areas

# The Bail Reform Act

- Release by pretrial defendants.  § 3142(b).

- Detention hearing may be reopened at any time before trial based on new evidence.  § 3142(f)(2).

- Release for any "compelling reason."  § 3142(i).

- If detained, immediate review by district court.  § 3145(b).

- If detained, immediate appeal to court of appeals.  § 3145(c).

- Post-conviction release.  § 3143.

- Bail pending appeal.  § 3143(b)(1).

# The Bail Reform Act

MEMORANDUM FOR ALL HEADS OF DEPARTMENT COMPONENTS AND
ALL UNITED STATES ATTORNEYS

FROM:                    THE ATTORNEY GENERAL

SUBJECT:                 Litigating Pre-Trial Detention Issues During the COVID-19
                         Pandemic

Second, in applying the familiar BRA analysis, which already includes some consideration of the defendant's "physical and mental condition," *id*., you should now consider the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic. Even with the extensive precautions we are currently taking, each time a new person is added to a jail, it presents at least some risk to the personnel who operate that facility and to the people incarcerated therein. It also presents risk to the individual being remanded into custody—risk that is particularly acute for individuals who are vulnerable to a serious infection under the Centers for Disease Control and Prevention ("CDC") Guidelines.

# The Bail Reform Act

This matter is before the court on "Defendant's Emergency Motion to Reconsider Pretrial Release on Conditions Based on Changed Circumstances and COVID-19 Pandemic" (Docket No. 109) ("Motion for Release").  The changed circumstance is the Covid-19 Pandemic, and the risk of it spreading at the correctional institution.  The defendant has no unique vulnerabilities to COVID-19 which places him more at risk than the general population.  The defendant proposes being released to live with his girlfriend, Tiffany Harris, with whom he has a young child.  Ms. Harris' two other young children live there as well, and Mr. Bermudez's 3 year old child from another relationship also visits there.  Ms. Harris' parents also live at the same residence.  During the detention hearing, there was evidence that the defendant involved Ms. Harris in helping consummate a drug sale that had been interrupted by his arrest.

After due consideration of all the pleadings, the Motion for Release is DENIED.

## II.  DISCUSSION

This court does not minimize the significance of the COVID-19 pandemic, and recognizes the potentially dangerous situation that could exist if the condition spread through the prison population.  The decision to keep the defendant in detention is not made lightly.  However, the evidence before this court is that there have not been any positive cases of COVID-19 in the prison population at Plymouth, and there is no indication that the defendant has come into contact with anyone who has been affected by the coronavirus.  As detailed in the government's Opposition, Plymouth has undertaken various precautions to ensure the safety of its population.  See Docket No. 112.

# Habeas and Criminal Defendants

- **Supreme Court**. *Jones v. Perkins*, 245 U.S. 390 (1918), *Henry v. Henkel*, 235 U.S. 219 (1914), *Johnson v. Hoy*, 227 U.S. 245 (1913), *Riggins v. United States*, 199 U.S. 547 (1905), *Greene v. Henkel*, 183 U.S. 249 (1902), and *Ex parte Royall*, 117 U.S. 241 (1886).

- **Courts of Appeals**. *Reese v. Warden Philadelphia FDC*, 904 F.3d 244, 246–48 (3d Cir. 2018); *Medina v. Choate,* 875 F.3d 1025, 1029 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1573 (2018); *Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995); *Fassler v. United States*, 858 F.2d 1016, 1017–19 (5th Cir. 1988).

- **Another session of this Court**. *Mahoney v. United States*, No. 13-11094, 2013 WL 3148653, at *2 (D. Mass. June 17, 2013) (Gorton, J.).

- **Treatise writers**. *E.g.*, Brian R. Means, *Federal Habeas Manual* § 1:29 (May 2019 Update).

# Why the BRA Makes this Case Different

- Three buckets of cases:  (1) ICE detainees; (2) post-conviction BOP inmates; (3) federal pretrial defendants.

- In the first two buckets, non-habeas release of detainees/inmates (1) is available only in *narrow* circumstances, and (2) requires a discretionary action by the *Executive Branch*.

- In this case, however, non-habeas release of pretrial defendants (1) is available in *broad* circumstances (*e.g.*, any "compelling reason") (2) based on a ruling from the *Judicial Branch*.

# Petitioners

- Petitioners are young and healthy:
  - Petitioner Baez is 31 with no relevant underlying conditions.
  - Petitioner Bermudez is 24 with no relevant underlying conditions.
  - Petitioner Gonsalves is 33 with no relevant underlying conditions.
  - Petitioner Lindsey is 36 with no relevant underlying conditions.
- The COVID-19 death rate of this demographic is 0.2%.

*See* https://www.worldometers.info/coronavirus/coronavirus-age-sex-demographics/ (last visited Apr. 30, 2020).

# Petitioners

9.  According to housing reports, detainee Anthony Baez is assigned to Unit DS1, a small housing unit with a capacity of 62.  As of April 20, the population of the unit was 34.  The inmate roster reflects that Baez was assigned to a five-man cell with two other inmates on that date.

10. According to housing reports, detainee Jonathan Bermudez is assigned to Unit H3, a large unit with a capacity of 139.  As of April 20, the population of the unit was 74.  The inmate roster reflects that Bermudez was in a cell by himself on that date.

11. According to housing reports, detainee Jermaine Gonsalves is assigned to Unit H1, a large unit with a capacity of 139.  As of April 20, the population of the unit was 68.  The inmate roster reflects that Gonsalves was in a cell by himself on that date.

12. According to housing reports, detainee Dedrick Lindsey is assigned to Unit BS1, a dormitory unit with a capacity of 60.  As of April 20, the population of the unit was 10.

# Deliberate Indifference is Required

- No dispute under Eighth Amendment.

- There is a dispute under the Fifth Amendment.

- *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), was an excessive force case under the Fourteenth Amendment (decided 5-4).

- Neither the First Circuit nor any session of this Court has extended *Kingsley* to cases asserting conditions-of-confinement claims. Another session refused to do so. *Couchon v. Cousins*, No. 17-10965, 2018 WL 4189694, at *6 (D. Mass. Aug. 31, 2018) (Stearns, J.).

- This Court is bound by *Suprenant v. Rivas*, 424 F.3d 5, 18-19 (1st Cir. 2005) (requiring deliberate indifference for pretrial detainees).

# This Case Is <u>Not</u> Like *Banks*

As of April 16, 2020, in the two District of Columbia jails at issue in *Banks*:

- 65 inmates confirmed positive for COVID-19;
- One inmate died while hospitalized;
- Unknown number of staff cases; and
- One staff member died.

ECF No. 47 at 5-6, 33, *Banks v. Booth*, No. 20-849 (D.D.C.)

# This Case Is <u>Not</u> Like *Wilson*

As of April 22, 2020, the Elkton Federal Correctional Institution had:

- 59 confirmed cases of COVID-19 among inmates;
- 46 confirmed cases of COVID-10 among staff;
- Facility was nearly at a full capacity (96%);
- All inmates in dorms with 300 inmates in each dorm.

ECF No. 10 at 7, ECF No. 38 at 14, *Wilson v. Williams*, No. 20-00794 (N.D. Ohio)