UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY BAEZ, JONATHAN BERMUDEZ, JERMAINE GONSALVES, and DEDRICK LINDSEY on behalf of themselves and all others similarly situated; <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> ANTONE MONIZ, SUPERINTENDENT OF THE PLYMOUTH COUNTY CORRECTIONAL FACILITY, in his official capacity; <br><br> Defendant-Respondent. | Case No. 1:20-cv-10753 |

## JOINT STATUS REPORT AND PROPOSED DISCOVERY SCHEDULE

Pursuant to the Court's Orders (ECF #64, #72), counsel for Petitioners Anthony Baez, Jonathan Bermudez, Jermaine Gonsalves, and Dedrick Lindsey and the proposed class ("Petitioners") and counsel for Respondent Antone Moniz ("Respondent") (collectively, the "Parties") have conferred regarding how and on what schedule this matter should proceed. At this time, the Parties are unable to agree on the permissibility of discovery in this case or the schedule on which any such discovery would be made. The Parties sets forth their respective positions below.

### A. Petitioners' Position

Petitioners propose that the Court establish an expedited discovery schedule that would provide Petitioners with a reasonable opportunity to gather evidence relevant to their claims for

relief.  It is well-established that habeas petitioners "are entitled to careful consideration and plenary processing of their claims including full opportunity for presentation of the relevant facts."  *See Harris v. Nelson*, 394 U.S. 286, 298 (1969).  The All Writs Act, 28 U.S.C. § 1651 grants federal courts "the power to fashion appropriate modes of procedure, including discovery, to dispose of habeas petitions as law and justice require."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (internal citations and quotation marks omitted).  Accordingly, "a district court, confronted by a petition for habeas corpus which establishes a prima facie case for relief, may use or authorize the use of suitable discovery procedures, including interrogatories, reasonably fashioned to elicit facts necessary to help the court to dispose of the matter."  *Harris*, 394 U.S. at 290.  Indeed, the Supreme Court has explained that "[t]he simple outline of § 2241 makes clear both that Congress envisioned that habeas petitioners would have some opportunity to present and rebut facts."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 526 (2004).  Indeed, in *Hamdi*, the Court concluded that the trial court could accept a government affidavit *only* where it provided the petitioner an opportunity to develop a factual record.  *Id.* at 538-39.[1]

Petitioners had hoped to reach agreement with Respondent's counsel regarding a proposed, limited discovery schedule designed to address the issues presented in this case. Petitioners currently anticipate that such discovery would be focused on the following areas of dispute: (1) PCCF's practices and conduct in connection with the testing (or lack thereof) of all staff, inmates and contractors at the facility for COVID-19; (2) PCCF's practices and conduct in connection with social distancing at the facility; (3) PCCF's practices and conduct in connection with the housing of all detainees, including the sharing of cells and dormitories and the

---

[1] Respondent has already submitted a series of affidavits to the Court for its consideration.  Accordingly, at a minimum, Petitioners must be permitted "to propound interrogatories" to each of those affiants.  *See* 28 U.S.C. § 2246

opportunities for social distancing at the facility; (4) PCCF's practices and conduct in connection with the provision and use of PPE; (5) PCCF's practices and conduct in connection with the provision of personal hygiene supplies to detainees, staff and contractors at the facility during the COVID-19 pandemic; (6) PCCF's practices and conduct in connection with sanitation and cleaning practices at the facility; (7) PCCF's practices and conduct in connection with education efforts directed towards detainees regarding the COVID-19 pandemic, PPE, and best practices regarding personal hygiene and cleaning of their surroundings; (8) PCCF's practices and conduct in connection with requests for and the provision of medical services; and (9) PCCF's physical plant and ventilation systems. Each of these subject areas bears directly on the claims set forth in the Petition, including Respondent's deliberate indifference, and Respondent is in unique and sole possession of many of these facts.

Late in the day on May 27, 2020, Respondent for the first time indicated that he would object to any proposed discovery in this case. Approximately 1 ½ hours before the filing deadline for today's status report, Respondent for the first time advanced lengthy legal arguments contending that Petitioners are required to demonstrate good cause in this status report and faults Petitioners for failing to include in this status report all of their proposed discovery requests. Petitioners had not understood the Court's Order to contemplate extensive legal briefing on this issue, nor should Petitioners be required to submit all of their discovery requests to the Court at this stage in the proceedings.

As set forth below, Petitioners have proposed an expedited discovery schedule which would allow for written and document discovery to be completed by late July 2020, to be followed by the completion of any and all fact and expert depositions by the end of October

2020. Such a process would provide Petitioners with a "full opportunity" to present facts relevant to their claims in this case. *Harris*, 394 U.S. at 298.

Petitioners propose the following schedule for discovery:

1. Request for Production of Documents, Request for Admissions and Interrogatories to be served no later than July 1, 2020;

2. Responses to Request for Admissions and Interrogatories to be served two weeks from the date of request or no later than July 15, 2020;

3. Responses to Request for Production of Documents to be served three weeks from the date of request or no later than July 21, 2020;

4. All fact depositions completed by September 30, 2020;

5. Expert witnesses disclosed by October 1, 2020;

6. Expert depositions completed by October 21, 2020;

7. Discovery to close by October 30, 2020.

Respondent has proposed that the Court deny Petitioners discovery in this case. However, the Court can exercise its discretion over whether and to what extent to apply to this case the Rules Governing Section 2254. In Petitioners' view, a strict application of those rules would likely delay the discovery process and the ultimate resolution of this case, as it would require Petitioners to submit any discovery requests to this Court prior to their issuance. Respondent's approach would also appear to limit Petitioners to, at most, one opportunity to request discovery, rather than the staggered approach Petitioners have proposed. Petitioners respectfully submit that such an approach would not provide Petitioners with a sufficient opportunity to develop the factual record to support their claims.

**B. Respondent's Position**

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).[2] As discussed below, Petitioners have not shown good cause for discovery in this matter. If so inclined, the Court should set a briefing schedule that would allow the issue to be resolved before July 1, 2020, the first date in Petitioners' proposed schedule, as set forth below.

    **1.    Habeas Actions Typically Do Not Require Discovery.**

There is no significant history of discovery in habeas cases prior to 1969, and there has never been a suggestion that the Constitution requires discovery in such proceedings. *See Harris v. Nelson*, 394 U.S. 286, 293 (1969) (in concluding that Federal Rules of Civil Procedure on discovery do *not* apply to habeas proceedings, explaining that "prior to [the promulgation of the federal rules in] 1938" there was no showing made that "discovery was actually being used in habeas proceedings"). In fact, it was "not until many years later" that factual questions were even considered in federal habeas cases, making it inconceivable that discovery would be an essential component of the writ. *Id*. at 295.

Thus, in the instant constitutionally-based habeas proceeding, there can be no question that the relevant settled habeas practice—not only in 1789, but for almost two centuries thereafter—would preclude discovery. *See Harris*, 394 U.S. at 295. That habeas practice of 1789 did not contemplate discovery or fact-finding by the habeas petitioner is clear. Indeed, "[o]ne of the maxims of eighteenth-century habeas corpus practice had been that the petitioner could not controvert the facts stated in the return." Gerald L. Neuman, Habeas Corpus,

---

[2] Petitioners had the option to bring this case under Section 1983, where discovery following the denial of a motion to dismiss would have been automatic. Instead, they chose to bring this case as a habeas case, which does not provide discovery as a matter of right.

Executive Detention, and the Removal of Aliens, 98 COLUM. L. REV. 961, 986 n.131 (1998) (citing, *inter alia*, R.J. Sharpe, The Law of Habeas Corpus 61-68 (1976)). The facts alleged by the Executive to continue to hold an individual "were to be taken as true, and the court was to determine whether the justification was legally sufficient." *Id.* Even in executive detention cases, courts traditionally conducted only limited factual review. *See INS v. St. Cyr*, 533 U.S. 289, 306 (2001) ("some evidence" review). While courts from the period permitted the prisoner to "allege additional facts consistent with the return that might rebut the appearance of justification," Neuman, 98 COLUM. L. REV. at 986 n. 131, that was not a constitutional requirement and certainly did not suggest that discovery was ever appropriate.

The Supreme Court has thus held, for example, that in view of the history of the writ and the intended scope of the Federal Rules of Civil Procedure a petitioner does not have the right to serve interrogatories on his custodian (although the Federal Rules would otherwise allow for broad discovery in civil suits). *Harris*, 394 U.S. at 292-98. Significantly, in 1938, when the federal rules were initially adopted, the expansion of statutory habeas corpus practice to its present scope was only in its primordial stages. *Mooney v. Holohan*, 294 U.S. 103, 113 (1935); *Johnson v. Zerbst*, 304 U.S. 458, 459 (1938); *Waley v. Johnston*, 316 U.S. 101, 102 (1942). And it was not until many years later that the federal courts considering a habeas corpus petition even began to make an independent determination of the factual basis of claims that state convictions had violated the petitioner's federal constitutional rights. *See Brown v. Allen*, 344 U.S. 443, 447-48 (1953).

That the Constitution did not require such innovations to the habeas practice of 1789 is demonstrated by the need for subsequent legislation to expand fact-finding authority of federal courts, which did not occur until after the Civil War. *See* Act of Feb. 5, 1867, ch. 28, § 1, 14

Stat. 385 (stating that a "petitioner may deny any of the material facts set forth in the return, or may allege any fact to show that the detention is in contravention of the constitution or laws of the United States," and requiring the federal court to "proceed in a summary way to determine the facts of the case, by hearing testimony and the arguments of the parties interested"). And it was in 1890 that the Supreme Court, citing the Civil War era statute, held that the federal courts could have a proper role in determining certain non-jurisdictional facts. *See Cunningham v. Neagle*, 135 U.S. 1, 70-75 (1890). The statutory expansion of the fact-finding role only proves the point that such functions are never constitutionally required.

Modern developments in statutory habeas procedure cannot alter this constitutional ceiling. Thus, it is of no moment that in *Harris* the Court interpreted the All Writs Act, 28 U.S.C. § 1651, to authorize limited discovery in statutory habeas cases at the discretion of the court. Indeed, the fact that discovery, even in modern statutory habeas cases, is *entirely discretionary*, *see Harris*, 394 U.S. at 300; Habeas Rule 6(a),[3] provides a complete answer to the question whether it is constitutionally required. Moreover, recent developments in habeas practice cannot alter the fact that there was no constitutional requirement for discovery in habeas cases. The Suspension Clause of the Constitution cannot operate as a "one-way ratchet that enshrines in the Constitution every grant of habeas jurisdiction" conferred by statute or judge-made common law, *see St. Cyr*, 533 U.S. at 341-42 (Scalia, J., dissenting), for if it did, then the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which limited state prisoners'

---

[3] Although Petitioners filed this petition for a writ of habeas corpus under § 2241, Rule 1(b) of the Rules Governing Section 2254 Cases states: "The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a) [*i.e.*, a habeas corpus action under 28 U.S.C. § 2241]." Courts have so held. *E.g.*, *Bowers v. U.S. Parole Comm'n, Warden*, 760 F.3d 1177, 1183 (11th Cir. 2014) (applying Rules Governing Section 2254 Cases to a habeas corpus action under § 2241).

access to the writ, would be unconstitutional, a proposition the Supreme Court rejected in *Felker v. Turpin*, 518 U.S. 651, 662-64 (1996) ("judgments about the proper scope of the writ are 'normally for Congress to make'") (citation omitted). Thus, there is significant support for the historical approach to habeas as providing the constitutional ceiling. *See Swain v. Pressley*, 430 U.S. 372, 384-85 (1977) (Burger, C.J., concurring in part and concurring in the judgment); Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 47 U. CHI. L. REV. 142, 170 (1970). Congress's repeal of habeas jurisdiction, in conjunction with the fact that constitutionally derived habeas corpus does not require discovery, is therefore fatal to the claim that discovery is appropriate in these proceedings.

### 2.    Petitioners Fail To Show Good Cause In This Status Report.

"Discovery is available only if the judge in the exercise of his discretion and for good cause shown grants leave." *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996) (citations omitted); *see also Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003) (petitioners are generally "not entitled to discovery as a matter of ordinary course . . . [unless there has been] a showing of good cause.") (citations omitted). "In order to show good cause, a petitioner must set forth specific allegations that provide reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Cobb v. Unger*, No. 1:09-CV-0491, 2013 WL 821179, at *2 (W.D.N.Y. Mar. 5, 2013) (internal quotation marks omitted). Moreover, "[t]he request must also include any proposed interrogatories and requests for admission, and must specify any requested documents." Habeas Rule 6(b).

Here, Petitioners have not shown "good cause" to obtain any discovery in the litigation. Indeed, in denying Petitioners' motion for injunctive relief, the Court recognized that "the petitioners have not established a likelihood of success on the merits of their constitutional

claims." Doc. # 64 at p.19; *see also id.* ("This is so whether the three risk areas the Court has discussed are considered separately or cumulatively."). *E.g.*, *Towers Financial Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 822 (S.D.N.Y. 1992) (citing *Local 1814 Int'l Longshoremen's Assoc. AFL-CIO v. New York Shipping Assoc., Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)); *Perez v. U.S.*, No. 14 Civ. 846 (NRB), 04 Cr. 937-1 (NRB), 2015 WL 3413596, at *5 (S.D.N.Y. May 8, 2015) (denying motion for discovery in habeas case where the petitioner failed to show good cause because petitioner's argument was clearly legally insufficient).

In addition, Petitioners have not "include[d] any proposed interrogatories and requests for admission" or "specif[ied] any requested documents." Habeas Rule 6(b). Rather, as reflected in their section in this status report, Petitioners merely describe broad categories of information they seek. That is plainly insufficient. *See Garafola v. United States*, 909 F. Supp. 2d 313, 335 (S.D.N.Y. 2012) (denying discovery in a habeas proceeding where petitioner failed to "articulate sufficient reasons as to why [the court] should permit the requested discovery," and rather, the petitioner's request for broad discovery "constituted a fishing-expedition.").

Moreover, Petitioners have not explained why Respondent's numerous earlier submissions to the Court, consisting of declarations, photographs, and other documents, are insufficient. Respondent has already provided—in response to Petitioners' motions and two Court orders seeking additional information, and voluntarily in status reports—detailed information regarding conditions at PCCF, protocols for screening and testing inmates, the number of inmates tested and the number of positive inmate tests, and all efforts undertaken to mitigate the spread of COVID-19 both generally and in response to any symptomatic inmate(s) and/or positive test(s). *See, e.g.*, Doc. # 23 (Respondent's opposition to motion for injunctive relief with declarations); Doc. # 25 (Respondent's status report); Doc. # 31 (Respondent's

response to court order with declarations); Doc. # 48 (Respondent's status report); Doc. # 53 (Respondent's status report); Doc. # 54 (Respondent's response to court order with declarations); Doc. # 57 (Respondent's supplemental response with declarations); Doc. # 62 (Respondent's status report); Doc. # 68 (Respondent's status report); Doc. # 70 (Respondent's response to court order with information PCCF's medical director).

Accordingly, based on the arguments and information they provide in this status report, Petitioners are not entitled to discovery in this habeas case.

### 3. The Court Could Set An Expedited Briefing Schedule For Petitioners To Show Good Cause.

To the extent the Court is so inclined, the Court should enter a scheduling order requiring that any party wishing to seek discovery file a motion for leave to take discovery under a good cause standard no later than June 12, 2020. Any such motion or motions should include a proposed schedule for the discovery sought. Responses to any such motion or motions must be filed no later than June 19, 2020. If leave to take any discovery is allowed, such discovery shall proceed in the manner ordered by the Court. If leave to file discovery is not allowed, then Respondent shall file a dispositive motion addressing the merits of Petitioners' petition within three weeks of the Court's order finding that no discovery is appropriate.

Dated: May 29, 2020

Respectfully submitted,

| | |
|---|---|
| */s/ Daniel Cloherty* | */s/ Emily Schulman* |
| Daniel J. Cloherty (BBO # 565772) | Emily R. Schulman (BBO #566374) |
| Saraa Basaria (BBO # 685705) | Adam W. McCall (*pro hac vice*) |
| TODD & WELD LLP | WILMER CUTLER PICKERING |
| One Federal Street, 27th Floor |    HALE AND DORR LLP |
| Boston, MA 02110 | 60 State Street |
| (617) 720-2626 | Boston, MA 02109 |
| dcloherty@toddweld.com | (617) 526-6077 |
| sbasaria@toddweld.com | emily.schulman@wilmerhale.com |

adam.mccall@wilmerhale.com

David E. Rudin (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 937-7249
david.rudin@wilmerhale.com

*Attorneys for Anthony Baez, Jonathan Bermudez, Jermaine Gonsalves, and Dedrick Lindsey and the proposed class*

ANDREW E. LELLING,
United States Attorney

By: */s/ Jason Weida*
Jason C. Weida
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3180
Jason.Weida@usdoj.gov

*Attorney for Antone Moniz*
*Superintendent of the Plymouth County Correctional Facility*

## CERTIFICATE OF SERVICE

I, Emily R. Schulman, counsel for Petitioners, hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                        */s/ Emily Schulman*
                                        Emily R. Schulman